# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
DIANE L. HOUK
JESSICA CLARKE

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
ASHOK CHANDRAN

DANIEL TREIMAN

April 13, 2018

*Via ECF*

Hon. P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *In re Ex Parte Application of Shareefah Khaled Alghanim*, 17 MC 00406

Your Honor:

    Petitioner Shareefah Khaled Alghanim submits this letter pursuant to Rule 4(B) of this Court's Rules of Individual Practice and in further support of her request for an Order, pursuant to 28 U.S.C. § 1782 and Fed. R. Civ. P. 37(a)(2), compelling Akin Gump Strauss Hauer & Feld LLP ("Akin") to produce documents in response to a subpoena authorized by this Court on November 16, 2017 ("Subpoena").

## PRELIMINARY STATEMENT

    Akin should produce documents responsive to the Subpoena because the Subpoena satisfies the statutory requirements of § 1782 and its scope is reasonable. Nonetheless, in the interests of facilitating prompt production, Petitioner now attaches a revised subpoena that further limits the scope of her initial requests.

    Akin's three arguments against compliance—the status of the British Virgin Islands Proceeding ("BVI Proceeding"), its role as attorney for a party in that proceeding, and burden—are unavailing. It is common ground that the foreign proceeding remains open (and therefore satisfies § 1782), attorneys are valid subjects for §1782 subpoenas, and Akin's complaints about the 7,000 responsive documents and related privilege review do not absolve the firm of its responsibility to respond to the requests and create a privilege log, if necessary.

    Akin's resistance to production should also be considered in light of its own role in facilitating the questionable transactions at the heart the BVI Proceeding. Petitioner is trying to trace millions in lost proceeds from transactions that her co-shareholder undertook with corporate assets, with Akin's assistance. The firm should not be permitted to thwart focused discovery into those very transactions. The subpoena should be enforced.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

## ARGUMENT

Akin should respond to the Subpoena because (I) the Subpoena meets the statutory requirements of § 1782; (II) it satisfies the applicable discretionary factors; and (III) Petitioner has now voluntarily narrowed its scope.

### I. The Subpoena Meets the Statutory Requirements of § 1782

Petitioner satisfies the statutory requirements of 28 U.S.C. § 1782 because she is an "interested person" who seeks discovery within the Southern District for use in the BVI Proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 257-58 (2004). Akin's only challenge to these factors is its half-hearted suggestion that the BVI Proceeding is not "pending" because it has not been actively litigated. But there is no requirement that a foreign proceeding be litigated "actively" to qualify for § 1782, and Akin's acknowledgment that the BVI Proceeding remains open is fatal to this objection.

Section 1782 requires a showing that the discovery be sought "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. The statute "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel Corp*, 542 U.S. at 258-59. An applicant need only show that "the action is being contemplated." *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015). An applicant may meet this requirement by retaining counsel to investigate possible action. *See Mees v. Buiter*, 793 F.2d 291, 295 (2d Cir. 2015).

In this case, the Subpoena was issued to obtain documents for use in the BVI Proceeding that remains open and ongoing. Dkt. 11 (Griffiths Decl.) ¶¶ 4-5. Akin's own submissions now confirm the court file "remains open[.]" Dkt. 24 (Iorio Decl.) ¶ 14. And Akin cites no authority for its suggestion that a case may not be "pending" for purposes of § 1782 because its docket is not "active." Petitioner has indicated her intent to pursue further legal action to protect FMA's assets, Dkt. 4 (Alghanim Decl.) ¶¶ 27, 31; she has retained counsel to that end, *id*. ¶¶ 17-18; and she seeks concrete relief, including the prevention of "the immediate threat [her co-shareholder's mismanagement] posed to FMA's continued and future existence" and the preservation of "at least those domain names holding real value to FMA." *Id.*[1] There is no dispute the BVI Proceeding is open; it is amendable to support from § 1782.

### II. The § 1782 Discretionary Factors Favor Production

In addition to the statutory factors, the discretionary factors weighed by courts considering § 1782 subpoenas also favor compelling Akin to respond to the Subpoena. And neither of Akin's arguments—that it is not a proper subject of the Subpoena and that the Subpoena is unduly burdensome—has merit.

---

[1] Unlike Akin's cases, Petitioner is seeking concrete, imminent relief. *Cf. Certain Funds*, 798 F.3d at 125 (finding that proceeding was not in reasonable contemplation because the cause of action had accrued five years before the applicants sought discovery or took any other steps to protect their rights).

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

### 1. Akin Is a Proper Subject of the Subpoena

Akin is not a party in the BVI Proceeding. And its argument that this Court should treat it as a party because it was a lawyer for a party (and effectively quash the Subpoena on that basis) is unavailing.

The Second Circuit has repeatedly approved § 1782 subpoenas to law firms for documents related to their clients. *See, e.g.*, *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) ("Indeed, documents held by an attorney in the United States on behalf of a foreign client, absent privilege, are as susceptible to subpoena as those stored in a warehouse within the district court's jurisdiction."); *In re Berlamont*, No. 14-mc-190, 2014 WL 3893593 (S.D.N.Y. Aug. 4, 2014), *aff'd sub. nom*, *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456 (2d Cir. 2014). And "section 1782 does not require an applicant to exhaust foreign discovery channels." *In re Mangouras*, No. 17 MC 172, 2017 WL 4990655 (PKC), at *6 (S.D.N.Y. Oct. 30, 2017).

Akin's argument that it stands in the shoes of its client for purposes of § 1782 rests on an over-reading of two sentences of *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2003). There, the Second Circuit affirmed denial of a Section 1782 application for discovery from a law firm on the grounds that the foreign forum—in that case, Germany—was "obviously unreceptive to the judicial assistance of an American federal court," pointing to the fact that German authorities had *specifically requested* that the applications be denied. In dicta, the *Schmitz* court also "suggest[ed]" that the client's status as a party to the foreign proceeding made the need for Section 1782 "not as apparent[.]" *Id.* at 85.

Subsequent courts have emphasized that *Schmitz* does *not* support the argument that Akin advances here: that just because a law firm's client is involved in the foreign proceeding, the law firm is shielded from discovery. For example, in *In re Kiobel*, this Court ordered a subpoena to the New York law firm Cravath, Swain & Moore LLP—notwithstanding the fact that its client was a party to the foreign proceeding—on the grounds that "[i]t is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the Section 1782 application, on which the district court should focus." No. 16 Civ. 7992, 2017 WL 354183, at *5 (S.D.N.Y. Jan. 24, 2017). There, the Court found Section 1782 aid appropriate because the client "[wa]s no longer in possession of many requested documents," notwithstanding the client's ability to request the documents from the firm and produce them directly in the foreign proceeding. *Id.*

Here, the need for discovery directly from Akin is manifest. Petitioner's co-shareholder Thunayan Alghanim has repeatedly failed to keep proper corporate records or provide Petitioner information she is entitled to. *See* Dkt. 4 (Alghanim Decl.) ¶ 20. And Thunayan has demonstrated little regard for his legal obligations and court orders, given his failure to respond to thirteen attempts by his own attorneys to contact him regarding compliance with the Subpoena. Accordingly, the documents Petitioner seeks from Akin are not practically obtainable through the BVI Proceeding and ordering disclosure from Akin serves the underlying purpose of Section 1782: efficient assistance to foreign litigation. *In re Metallgesellschaft*, 121 F.3d 77, 79

(2d Cir. 1997).

Akin's suggestion that other procedural mechanisms in the BVI Proceeding are preferable to responding to the Subpoena here fares no better. Petitioner has independent standing under § 1782 to seek these documents because she is an interested person. The statute was enacted so that litigants like Petitioner would not be forced to petition another court to seek the materials on their behalf, as in the previous letters rogatory regime. *Cf. id.* (noting that the "quasi-exhaustion requirement," as Akin would have this Court impose, "finds no support in the plain language of the statute and runs counter to its express purposes"). Akin's suggestion that—instead of Akin producing its documents—Petitioner should re-commence discovery in the BVI Proceeding, then petition for appointment of a receiver, and then petition that receiver to seek the same documents from Akin is exactly the kind of byzantine set of obstacles that § 1782 was enacted to overcome. Moreover, even at the end of Akin's proposed labyrinth, Petitioner would come to the same place: whoever would produce the documents to Petitioner would need to consider Akin's assertions of confidences and privilege. Akin's proposed economy is a mirage.

## 2. The Scope of the Subpoena Is Reasonable

The Subpoena is not unduly burdensome. It seeks eight narrowly drawn classes of documents, the majority of which are non-privileged. Those documents that would be privileged should nonetheless be produced either under the fiduciary exception or because Akin has waived privilege by failing to prepare a privilege log. And Rule 1.6 is not a bar to production.

### A. Many of the Documents Are Non-Privileged, Routine Business Records That Are Not Unduly Burdensome to Produce

Even without a privilege log, it is apparent that not all the documents sought are privileged. For example, documents related to FMA's bank accounts and financial information, including escrow deposits, or related to the identities of those accessing FMA's accounts, are not privileged. *S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 367 (N.D.N.Y. 2010). And such non-privileged documents do not become privileged by virtue of being held by a law firm. *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc.*, No. 11 CIV. 6189 (DLC), 2014 WL 1327952, at *3 (S.D.N.Y. Apr. 3, 2014).[2] These non-privileged documents require no privilege review and should be produced immediately.

Moreover, Akin's unadorned invocation of the "burden" of a privilege review—without supplying an estimate of the number of privileged documents—is insufficient. "[I]nconvenience alone will not justify an order to quash a subpoena" issued under Section 1782. *In re Ex Parte Application of Kleimar N.C.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016). Akin bears the burden of demonstrating overbreadth, and "cannot merely assert that compliance with the subpoena

---

[2] *See, also In re Application of Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453, at *5 (S.D.N.Y. Dec. 24, 2014) (ordering production of bank records, including wire transfers, pursuant to section 1782); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intern. (USA) Ltd.*, 785 F. Supp. 2d 434, 437 (S.D.N.Y. 2011) (authorizing subpoena of account statements, account opening materials, customer files, and due diligence materials).

would be burdensome without setting for the manner and extent of the burden and . . . the probable negative consequences of insisting on compliance." *Id.* Akin's conclusory claim that the Subpoena—for which Akin admits only 7,000 documents are even *potentially* responsive—is overbroad does not excuse noncompliance. And the firm's suggestion that these records are "very likely within the reach of subpoenas already issued by Petitioner to [other entities]," Br. at 14, is no reason to deny production, as a Section 1782 subpoena may be used to "obtain discovery from more than one source." *Grupo Mexico Sab de CV*, No. 3:14 MC 00073, 2014 WL 12691097, at *3 (N.D. Tex. 2014).

Finally, even if the volume of responsive documents were burdensome—which it is not—such burden is only one factor in determining whether the burden is *undue*. Courts must consider the "relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, [and] the particularity with which the documents are described and the burden imposed." *In re Application of Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C.1782 To Conduct Discovery For Use In A Foreign Proceeding*, No. 13 Misc. 397, 2014 WL 7232262, at *10 (S.D.N.Y. Dec. 10, 2014). Here, the documents sought, like those related to FMA's management and transactions, are plainly relevant to the ongoing BVI Proceeding, and needed by Petitioner to support her requests for relief therein. As a result, any burden in producing responsive material is outweighed by Petitioner's need.

### B. Akin Must Produce Documents Under the Fiduciary Exception

To the extent that any responsive documents are privileged, they are not privileged *with respect to Petitioner*. Federal and New York state law[3] contain a fiduciary exception to general privilege rules, which prevents "corporate management [from] shield[ing] communications from shareholders on the basis of attorney-client privilege." *Quintel Corp. N.V. v. Citibank, N.A.*, 567 F. Supp. 1357, 1360-61 (S.D.N.Y. 1983). Of the nine factors relevant to this determination, Akin concedes that six favor production. Akin Br. at 18-19; *see Hansbauer v. Del. N. Cos. Sportservice, Inc.*, No. 14 CV 138, 2014 WL 3339477, at *1 (W.D.N.Y. June 19, 2014). And, contrary to Akin's argument, the remaining three factors favor application of the exception because: (1) Petitioner has colorable claims in the BVI Proceeding; (2) the discovery is not readily available through alternative sources; and (3) Petitioner is not "blindly fishing."

First, Petitioner's claims in the BVI Proceeding are plainly colorable. She has asserted that Thunayan has breached his fiduciary duties in in a variety of ways, including by failing to properly care for FMA's assets and by wrongfully withholding corporate revenue. These allegations support a claim for breach of fiduciary duty. *See, e.g.*, *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 116 (S.D.N.Y. 2009).[4]

---

[3] Akin's failure to produce a privilege log prevents Petitioner or this Court from assessing which, if any, communications are governed by BVI privilege law. *See Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992). Akin cannot evade compliance with the Subpoena by simply asserting its understanding of BVI law while refusing to produce a privilege log showing that BVI privilege law applies to any of the subpoenaed communications.

[4] Petitioner's claims target specific actions taken by Thunayan in the management of FMA,

Second, the majority of the materials sought from Akin only reside in the firm's files because they concern transactions that Akin coordinated and strategies it implemented. Akin's refusal to provide a privilege log renders its vague allusions to duplication a nullity. And Thunayan's repeated failure to respond to the demands of Petitioner or his own attorneys also undermines Akin's claim that the documents requested in the Subpoena are practically available from him. (As discussed in Part III below, Petitioner's agreement to further narrow her requests strengthens this analysis, as well.)

Finally, Petitioner's targeted search for documents bearing on Akin's assistance in the management of FMA, including facilitating transactions concerning the purchase and sale of FMA assets, and the subsequent treatment of related revenues are sufficiently tailored to support application of the fiduciary exception.

### C. Akin's Failure to Produce a Privilege Log Waives Privilege

In addition to failing to meet its evidentiary burden of showing the subpoena is overbroad, Akin's failure to provide a privilege log waives its assertion of privilege.

It is the general rule in this Circuit that a party "waive[s] its privilege protections by failing to produce in a timely manner a privilege log that complie[s] with the applicable rules." *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167 (S.D.N.Y. 2014). This rule is strictly enforced; even deficiencies as minimal as failing to differentiate communications protected by the work product privilege from those protected by the attorney-client privilege can suffice to waive both. *See Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., PC*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007).

*In re Chevron Corporation* is directly applicable to this case. There, as here, an attorney recipient of a Section 1782 subpoena moved to quash the subpoena by challenging both its statutory and discretionary bases. *See In re Application of Chevron Corp.*, 749 F. Supp. 2d 135, 137 (S.D.N.Y. 2010) (*Chevron I*). Given his opposition, the attorney "offered no proof of even a single communication between him and [the client], let alone such a communication that was related to seeking or providing legal advice." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 167 (S.D.N.Y. 2010) (*Chevron II*). The attorney "failed to identify the documents withheld, even by categories, and . . . did not provide sufficient information to 'enable[] the litigant[s] seeking

---

distinguishing them from the one case Akin cites in which a court found that shareholder plaintiffs were not entitled to make use of the fiduciary exception. *See In re Omnicom Grp., Inc. Sec. Litig.*, 233 F.R.D. 400, 412 (S.D.N.Y. 2006) (shareholders did not represent a substantial portion of the shareholders and only brought claims that did not allege malfeasance of the directors). In addition, Akin relies too heavily on past procedural steps in the BVI Proceedings (like the denial of an application for liquidation) to predict the success of future claims. *Cf. In re Nichols*, 447 B.R. 97, 108 (N.D.N.Y. 2010) (describing court-ordered liquidation as "the most potent sanction" and "so extreme, it will rarely be enforced" (internal quotation marks omitted)). Unsurprisingly, Akin has not identified a single case in which a court has declined to apply the fiduciary exception where shareholders' claims are *premised* on mismanagement by a director.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 7

discovery and the court to evaluate whether each of the withheld documents is privileged.'" *In re Chevron Corp.*, 749 F. Supp. 2d 170, 183 (S.D.N.Y. 2010) (*Chevron III*) (alterations in original). The court found it inexcusable that the attorney had provided *no* information about the subpoenaed documents despite having received the subpoena three months earlier, holding that the attorney "waived all privileges and protections that might have been asserted in response to the subpoenas, including those with respect to the 8,562 documents belatedly enumerated in the log[.]" *Id.* at 184.

In this case, Akin's assertion that it has raised "serious threshold issues that render the Subpoena invalid," Akin Br. at 16, is not enough to excuse Akin's complete failure to provide even a categorical privilege log. Akin was served with the Subpoena on November 17, 2017. But Akin has taken no steps for five months to provide Petitioner or this Court with information sufficient to evaluate Akin's claims of privilege. This failure is particularly acute given that Akin has already identified the full universe of responsive documents as numbering only 7,000. There is no reason why, at a minimum, a categorical privilege log could not be produced. *Am. Broadcasting Companies, Inc. v. Aereo, Inc.*, 2013 WL 139560, at *1 (S.D.N.Y. Jan. 11, 2013).[5] Akin's failure to engage in any privilege analysis acts as a waiver.

### D.  Rule 1.6 Does Not Bar Disclosure

The documents requested in the Subpoena do not contain confidential information of the sort guarded by Rule 1.6. Akin's argument to the contrary—relegated to a footnote—provides no basis to quash the Subpoena.

Documents do not become privileged simply by virtue of being housed in a law firm. *See Ratliff*, 354 F.3d at 170-71. And Petitioner's statutory rights to discovery under Section 1782 cannot be abridged by the Rules of Professional Conduct. *See Hollingsworth v. Perry*, 558 U.S. 183, 196 (2010) (noting that local rules, court rules, and other similar enactments must give way to statutory rights). Akin tries to manufacture such protection by invoking its boiler-plate assurance to Thunayan that it "do[es] not disclose nonpublic personal information about [its] clients or former clients to anyone . . . ." Akin Br. at 5 n.1.[6] But the next clause of this guarantee contains an exception for disclosures "permitted by law and applicable Rules of Professional Conduct." *Id.* Rule 1.6 contains a similar exception, providing for disclosure "to comply with other law or court order." And a validly issued subpoena "constitutes a 'law' that requires [a law firm] to reveal the allegedly confidential client information sought here absent a valid basis for objection, such as privilege or lack of relevance." *S.E.C. v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011). The Subpoena is just such an order. Any confidentiality obligations imposed by Rule 1.6 that have attached to responsive documents must yield in the face of the Subpoena authorized by this Court.

---

[5]  Akin's failure to move for a protective order and produce only a categorical privilege log has foreclosed its ability to now provide one. *See Crandall v. Am. Family Mut. Ins. Co.*, No. 2:11-cv-497, 2012 WL 5499854, at *1 (D. Utah Nov. 13, 2012).

[6]  Akin provides no explanation for how any of the information requested in the Subpoena would constitute Thunayan's "personal" information as covered by Akin's policy.

Emery Celli Brinckerhoff & Abady LLP
Page 8

### III. Petitioner Has Voluntarily Narrowed Her Requests

Although the Subpoena is not overbroad as written, in an effort to reach an expeditious resolution of this matter, Petitioner is amenable to serving the attached narrowed subpoena, without prejudice to seeking additional discovery, if necessary. *See* Ex. A (redline); Ex. B (clean). In the revised subpoena, Petitioner has removed Requests 1 and 2. And she has narrowed the remaining six requests to target information related to FMA's finances, and focus on FMA Inc., rather than its affiliated entities. These limits will substantially lower any burden on Akin.

### CONCLUSION

For the reasons set forth herein and in Petitioner's opening letter, Petitioner requests the Court to order Akin to comply with the revised subpoena within thirty days, without prejudice to Petitioner seeking leave for additional discovery, for good cause shown. This approach will allow Akin to produce a narrower subset of the materials sought by the original Subpoena and Petitioner will be able to refine any subsequent requests based on that production.

Respectfully submitted,

/s

O. Andrew F. Wilson

Enclosures

cc.    All attorneys of record